**Charles W. COTTRELL et al., d.b.a. Cottrell's Bakery, et al., Appellants,**

v.

**MARTIN A. CEDER, INC., et al., Appellees.**

Court of Appeals of Kentucky.

March 6, 1964.

C. W. Swinford, Stoll, Keenon & Park, Lexington, for appellants.

B. L. Kessinger, Jr., Harbison, Kessinger, Lisle & Bush, Lexington, for appellees.

PALMORE, Judge.

Shortly before 6:00 A.M. on March 17, 1961, while it was yet dark, William Lewellyn, driving a Volkswagen panel truck on

the business of his employer, Cottrell's Bakery,[1] collided with a pickup truck owned by Martin A. Ceder, Inc. (hereinafter called Ceder), and parked in front of the home of its employe, Howard Bunton. Lettie Fair, a passenger in the Volkswagen, sued both Lewellyn and Bunton and their respective employers for personal injuries and, pursuant to a jury verdict, got judgment against Lewellyn and Cottrell for $50,441. In the same judgment a cross-claim by Lewellyn and Cottrell against Bunton and Ceder for contribution was dismissed. In a separate suit tried at the same time but which is not before us, Ceder recovered $775.86 in property damages from Lewellyn and Cottrell, and Cottrell recovered nothing on its counterclaim for damages to the Volkswagen.

The judgment in favor of Lettie Fair was paid and noted of record by an order of satisfaction reciting that it was without prejudice to the rights of Lewellyn and Cottrell on appeal[2] from so much of the judgment as dismissed their cross-claim against Bunton and Ceder for contribution. It is the latter phase of the judgment that is attacked on this appeal. Lewellyn and Cottrell contend that the verdict absolving Bunton and Ceder of liability to Lettie Fair was induced by erroneous instructions setting out their duties. They seek a new trial which, if it be established that Bunton and Ceder should have been found liable to Lettie Fair, will entitle them (Lewellyn and Cottrell) to contribution from Bunton and Ceder even though their respective rights and liabilities toward Lettie Fair have been concluded.

■ Bunton and Ceder moved to dismiss the appeal on the theory that the judgment clearing them of negligence toward Lettie Fair, being final and unappealed, is res judicata against any further litigation of the issue. As between each of the defendant parties on the one side and Lettie Fair on the other, it is; but as between the two sets of defendants it is preserved by this appeal. Hence we have overruled the motion to dismiss.[3]

The accident occurred on the Harrodsburg Road near the south city limits of Lexington. Though state-maintained (cf. KRS 177.020) as part of U. S. Highway 68, the highway itself was within the corporate boundaries of the city, whereas the territory on each side, including the houses fronting thereon, had not been annexed and was outside the city. The area was suburban residential in character and Bunton's home was one of many houses lining the west side of the road, which at the point in question was a 4-lane highway divided by a median strip. The westerly or southbound pavement was 26.2 feet wide and for a distance of 500 feet or more approaching from the north was straight.

At the time and place of the accident there were no obstructions on the highway except for Bunton's truck, which was 77 inches wide and was parked facing southward next to the west margin of the pavement. The night was dry and clear and visibility was good. The Volkswagen driven by Lewellyn was 67.9 inches wide. Lewellyn claimed that the Bunton truck was parked at an angle. However, the court instructed the jury under a city ordinance that it was Bunton's duty to park parallel and with his right rear wheel within 12 inches of the curb, and the question with which we are now concerned is not *how* his truck was parked on the right-of-way, but whether its presence violated KRS

1. A partnership, the members of which are collectively referred to in this opinion as Cottrell.

2. Under the particular circumstances we construe the term "right of appeal" used in this order as having the broader connotation "rights on appeal."

3. No question is raised as to the possible effect of the judgment in the separate property damage suit.

189.450(1),[4] KRS 189.030,[5] or § 18–129 of the Lexington city ordinances [6] and, if so, whether any of such violations was sufficiently related to the accident to entail civil liability therefor.

With regard to the statutory provisions, it was held in Duff v. Lykins, Ky., 306 S.W.2d 252 (1957), "that a motorist properly may park his vehicle without lights on a city street unless the city has by ordinance (or lawful regulation thereunder) prohibited such parking." Appellants seek to avoid this precedent on the theory that the annexation of the highway right-of-way by the city was "nominal and for the purpose of policing only," that Harrodsburg Road was in reality a main highway and not a city street. Turning the same proposition the other way, however, it is equally a technicality that the surrounding, built-up residential area had *not* been annexed and therefore was not part of the "city." We are not persuaded by the argument that because the city had not adopted parking regulations for the specific area in question it must have regarded it as within the exclusive hegemony of the state. The concrete fact is that the road was in the city, and the legal effect of that fact cannot be made to depend on the state of mind of the city's traffic engineer. Duff

v. Lykins applies. Hence the court properly declined to instruct on KRS 189.030 and 189.450.

The city ordinance prohibiting truck parking for longer than an hour at a time in residential areas also is inapplicable to this case. We do not construe the ordinance as intended to prevent accidents. Its manifest objective is esthetic and for the benefit of the inhabitants of, rather than the travelers in, residential areas of the community. The fact that the parked truck may have been in violation of it was no more than coincidental to the accident. Therefore, since (1) Lewellyn and Cottrell were not within the class of persons whom the ordinance was intended to protect and (2) the harm that occurred was not within the scope of what the ordinance was intended to prevent, there was no basis for an instruction on liability by reason of the violation. Cf. Prosser on Torts (2d ed.), § 34, p. 152 et seq.; 38 Am.Jur. 834 (Negligence, § 163). See also discussion in Ross v. Jones, Ky., 316 S.W.2d 845 (1958).

We find it unnecessary to discuss the questions of proximate cause [7] and Lewellyn's negligence as a possible unforeseeable supervening cause of the accident.

The judgment is affirmed.

---

4. "No person shall stop a vehicle, leave it standing or cause it to stop or to be left standing upon the main traveled portion of a highway; provided however, that this section shall not be construed to prevent parking off the main traveled portion of a highway or street in a city or suburban area where such parking is otherwise permitted," etc.

5. Requiring, in substance, that vehicles on a highway at night be illuminated.

6. "It shall be unlawful for any person to park a truck in any residential section

for longer than one hour, except when loading or unloading."

7. See, however, the distinction properly drawn by Prosser at p. 155. Conceding that the presence of the parked truck was a proximate cause of the accident, the dispositive point is that its being there in violation of the ordinance *did not constitute negligence toward the injured party*, because it was not within the intendment of the ordinance to make it so. Perhaps it could be said that although the physical circumstance may have been a proximate cause, the law violation, as such, was not.